UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
                                                        )
WILLIAM WHITE, R. CARLEEN CORDWELL, KEN BAILEY, )
NADINE MONACO, KAREN LODGE, HENRY KRIEGSTEIN, )
JOAN KRIEGSTEIN, HILARY SCHULTZ, ANN            )
BUTTRICK FLOYD, AND SANDCASTLE REALTY, INC.     )
                                                        )
Plaintiffs,                                             )
                                                        )
v.                                                      )      07-CV-11601RWZ
                                                        )
R.M. PACKER COMPANY, INC.,                              )
DRAKE PETROLEUM CO., INC.,                              )
KENYON OIL COMPANY,                                     )
MID-VALLEY OIL COMPANY,                                 )
DEPOT CENTER INC., AND                                  )
FRANCIS J. PACIELLO D/B/A EDGARTOWN MOBIL               )
                                                        )
Defendants.                                             )
_____)


PLAINTIFFS' OPPOSITION TO DEPOT CORNER, INC.'S  AND FRANCIS J. PACIELLO'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

**Introduction**

   Defendants Depot Corner Inc. and Francis J. Paciello seek as a matter of law to dismiss

Plaintiffs' claim that they violated Mass. Gen. Law c. 93A's and 940 CMR § 3.18's (hereinafter

"the Massachusetts Price Gouging Law") prohibition against price gouging.  They make this

argument without citing to a single chapter 93A case or a single case interpreting any state's

"price gouging" statute in the manner they ask this court to interpret the Massachusetts statute.

Defendants rely totally on "common law" principles inapplicable to a statutory prohibition such

as chapter 93A, which if applied to chapter 93A's price gouging provisions, would render

-1-

Section 3.18 a nullity.  They ignore cases from other jurisdictions interpreting price gouging statutes, under which similar behavior to that of defendants has found to be price gouging.  They ask the Court to disregard the definition of "price gouging" established by the Federal Trade Commission under which defendants' actions could be found to be price gouging.

### Statement of Facts

Hurricane Katrina made landfall in the United States on August 29, 2005.  Federal Trade Commission Report, *Investigation of Gasoline Price Manipulation and Post-Katrina Gasoline Price Increases (Spring 2006)*, p. 59, appended to *Schultz Aff. as Ex. # 1*.  Hurricane Rita made landfall on September 24, 2005.  *Id.*  A "market emergency", defined as an "abnormal disruption of any market for petroleum products", 940 CMR § 3.01, commenced on August 29, 2005 and concluded on December 1, 2005.[1]

The defendants Depot Corner, Inc. and Francis J. Paciello (hereinafter collectively referred to as "Depot Corner") operated two gasoline stations in the town of Edgartown, Massachusetts during the "market emergency" period.  *Bastardi Aff., ¶ 3.*  One station was located at 141 Main Street (hereinafter referred to as "the Depot Corner station").  *Id..*  The second station was located at 199 Upper Main Street (hereinafter referred to as "the Edgartown Mobil station").  *Id..*  Depot Corner paid the same price for the gasoline delivered to both of its gasoline stations located in Edgartown.  *Id., ¶ 4.*  However, gasoline was sold at different prices at the two gasoline stations.  *Id..*  Both gasoline stations sold regular gasoline, premium gasoline and diesel fuel.  *Id., ¶ 5.*

---

[1]     Defendants accept, for purpose of their Summary Judgment Motion, plaintiffs' contention that a market emergency existed during this period.  *Def. Memo, pp. 2-3, fn. 2.*

In August 2005, Edgartown Mobil bought regular gasoline at an average price of $2.59/gallon, sold regular gasoline at an average price of $3.20/gallon and realized an average gross profit of $.61/gallon.[2]  *Id., Ex. # 1.*   In September 2005, Edgartown Mobil bought regular gasoline at an average price of $2.94/gallon, sold regular gasoline at an average price of $3.73/gallon and realized an average gross profit of $.78/gallon (i.e. a 28% increase in average gross profit from the month prior to the market emergency).  *Id.*  In October 2005, Edgartown Mobil bought regular gasoline at an average price of $2.56/gallon, sold regular gasoline at an average price of $3.48/gallon and realized an average gross profit of $.92/gallon (i.e. a 51% increase in average gross profit from the month prior to the market emergency).  *Id.*  In November 2005, Edgartown Mobil bought regular gasoline at an average price of $2.20/gallon, sold regular gasoline at an average price of $3.040/gallon and realized an average gross profit of $.85/gallon (i.e. a 51% increase in average gross profit from the month prior to the market emergency).  *Id.*  In December 2005, Edgartown Mobil bought regular gasoline at an average price of $2.59/gallon, sold regular gasoline at an average price of $2.90/gallon and realized an average gross profit of $.66/gallon.  *Id.*

---

[2]      The prices calculated by Ms. Bastardi from defendants' records are similar, but not always, identical to the prices noted in the table attached to the affidavit of Louis Paciello.  The difference in the numbers is attributable to the fact that while defendants bought and sold gasoline at a price broken down to one/hundredth of a cent, defendants' table rounds off all numbers to two places.  Defendants round up all costs, and frequently rounded down the price at which it sold its gasoline.  Plaintiffs suggest that the numbers attached to Ms. Bastardi's affidavit are more accurate.

## Argument

I.    THERE IS A DISPUTE OF MATERIAL FACT AS TO WHETHER DEFENDANTS
ENGAGED IN PRICE GOUGING IN THE SALE OF REGULAR GASOLINE AT THE
EDGARTOWN MOBIL STATION.

The Massachusetts Price Gouging Law, 940 CMR § 3.18 was promulgated by the

Attorney General pursuant to Mass. Gen. Laws, Chapter 93A, § 2 (c).   Section 3.18, which is

captioned "Price-Gouging", reads as follows:

> (1) It shall be an unfair or deceptive act or practice, during any market emergency, for
> any petroleum-related business to sell or offer to sell any petroleum product for an
> amount that represents an unconscionably high price.
>
> (2) A price is unconscionably high if:
>
>> (a) the amount charged represents a gross disparity between the price of the
>> petroleum product and
>>
>>> 1. the price at which the same product was sold or offered for sale by the
>>> petroleum-related business in the usual course of business immediately
>>> prior to the onset of the market emergency, or
>>>
>>> 2. the price at which the same or similar petroleum product is readily
>>> obtainable by other buyers in the trade area; and
>>
>> (b) the disparity is not substantially attributable to increased prices charged by the
>> petroleum-related business suppliers or increased costs due to an abnormal market
>> disruption.

A.    There is a Dispute of Material Facts as to Whether Defendants Sold Regular
Gasoline during the Market Emergency Period at a Price Which Was Grossly
Disparate to the Price At Which It Sold Regular Gasoline Immediately Prior to
the Market Emergency Period.

There is little dispute about the prices at which defendants sold regular gasoline at its

Edgartown Mobil gas station.  In the first 28 days of August, 2005 (prior to Hurricane Katrina

making landfall), Edgartown Mobil sold regular gasoline at an average price of $3.17/gallon.

*Bastardi Aff., Ex. # 1; Paciello Aff., Ex. "A".*  In September, 2005, according to plaintiffs'

calculations, defendants sold regular gasoline at an average price of $3.73 (i.e. 57 cents higher than it had been selling immediately prior to Hurricane Katrina), while according to defendants' calculations, defendants sold regular gasoline at an average price of $3.72. *Id.* In October, 2005, both sides calculate the average price per gallon of gasoline sold to be $3.48 (i.e. 31 cents higher than it had been selling immediately prior to Hurricane Katrina) . *Id.* The peak price at which gasoline was sold was $3.889/gallon (i.e. 72 cents higher than it had been selling immediately prior to Hurricane Katrina), a price which was maintained for the six day period of September 3, 2005 - September 8, 2005. *Id.*

Similarly, there is no dispute that Edgartown Mobil increased its profit margin/gallon from what it had been realizing prior to Hurricane Katrina by 17 cents/gallon in September 2005, by 31 cents/gallon in October 2005, and by 24 cents/gallon in November 2005.

Both parties acknowledge there is no case law interpreting the Massachusetts Price Gouging Law. "In analyzing what constitutes unfair methods of competition and unfair or deceptive acts or practices, which are not defined in G.L. c. 93A, this court looks to interpretations by the Federal Trade Commission." *Ciardi v. LaRoche, Ltd.*, 436 Mass. 53, 59 (2002).

Section 1809 of the Energy Policy Act of 2005, Pub. L. No. 109-58 § 1809, 119 Stat. 594 (2005) required the Federal Trade Commission to "conduct an investigation to determine if the price of gasoline was being artificially manipulated by reducing refinery capacity or by any other form of market manipulation or price gouging practices. In addition, Section 632 of the Federal Trade Commission's appropriations legislation for fiscal 2006 directed the Commission to

investigate nationwide gasoline prices and possible price gouging in the aftermath of Hurricane Katrina.  2006 Pub. L. No. 109-108 § 632.  In response, the Federal Trade Commission issued its *Investigation of Gasoline Price Manipulation and Post-Katrina Gasoline Price Increases (Spring 2006)*, appended to *Schultz Aff. as Ex. # 1.*

 The FTC Report is instructive regarding the question of whether there was a gross disparity in price offered by the defendants after hurricanes Katrina and Rita, when compared to the price offered immediately prior to the hurricanes.  The FTC examined gasoline prices at 24,197 gasoline stations across the country.  *Schultz Aff., Ex. # 1, pp.* 109,114, fn 78.   It found that retailers priced at very high prices for only very short periods.  *Id., p. 109.*  In fact, in only one city studied did the highest price stay above $3.50/gallon for more than one day.  *Id.*  In Chapel Hill, a high of $3.71 was posted for four consecutive days at one station.  *Id.*  Stations' peak price generally lasted only 1 or 2 days, and only lasted for 4-5 days on a couple of occasions for the over 24,000 stations studied.  *Id., pp. 109-110.*  Four thousand six hundred and fifty four (4,654) stations were examined in the Northeast, while one thousand five hundred and eighty nine (1,589) stations were examined in the Boston area.  *Id.,* p. 135, Table 6.8.

 The FTC did not examine gas prices at defendants' gas station in Edgartown.  If it had, it would have seen that at the Edgartown Mobil station, gasoline was sold for 47 straight days at a price above $3.50/gallon , and that the peak price of $3.889 remained for six consecutive days. *Paciello Aff., Ex. "A"; Bastardi Aff., Ex. 1.*

 New York case law is also instructive in determining whether the 72 cent/gallon increase in the price of gasoline at Edgartown Mobil should be considered as a matter of law a grossly

disparate price increase.[3]  New York, like Massachusetts, has a "price gouging" law.  The law, like the Massachusetts law, defines "price gouging" as "unconscionably extreme" pricing in periods of market disruptions gauged by a "gross disparity" in before and after pricing or when compared to comparable pricing in the trade area, which cannot be justified by additional costs outside the control of the defendant.  Specifically, New York Gen. Bus. Law §396-r provides in relevant part:

> 1. Legislative findings and declaration. The legislature hereby finds that during periods of abnormal disruption of the market caused by strikes, power failures, severe shortages or other extraordinary adverse circumstances, some parties within the chain of distribution of consumer goods have taken unfair advantage of consumers by charging grossly excessive prices for essential consumer goods and services.
>
> In order to prevent any party within the chain of distribution of any consumer goods from taking unfair advantage of consumers during abnormal disruptions of the market, the legislature declares that the public interest requires that such conduct be prohibited and made subject to civil penalties.
>
> 2. During any abnormal disruption of the market for consumer goods and services vital and necessary for the health, safety and welfare of consumers, no party within the chain of distribution of such consumer goods or services or both shall sell or offer to sell any such goods or services or both for an amount which represents an unconscionably excessive price. . . .
>
> 3. Whether a price is unconscionably excessive is a question of law for the court.
>
>> (a) The court's determination that a violation of this section has occurred shall be based on any of the following factors: (i) that the amount of the excess in price is unconscionably extreme; or (ii) that there was an exercise of unfair leverage or unconscionable means; or (iii) a combination of both factors in subparagraphs (i) and (ii) of this paragraph.

---

[3]      Plaintiffs contend that a decision as to whether the increase in gas prices at Edgartown Mobil was grossly disparate should look at all of the circumstances and facts surrounding the sale of gasoline at the time and is inappropriate for determination on a summary judgment motion.  However, if this Court were to find that there is no dispute of material facts regarding the issue of whether gasoline was sold at a price which was grossly disparate to the price at which defendants sold regular gasoline immediately prior to the market emergency period, the Court should find as a matter of law that the prices were grossly disparate.

(b) In any proceeding commenced pursuant to subdivision four of this section, prima facie proof that a violation of this section has occurred shall include evidence that

(i) the amount charged represents a gross disparity between the price of the goods or services which were the subject of the transaction and their value measured by the price at which such consumer goods or services were sold or offered for sale by the defendant in the usual course of business immediately prior to the onset of the abnormal disruption of the market or

(ii) the amount charged grossly exceeded the price at which the same or similar goods or services were readily obtainable by other consumers in the trade area. A defendant may rebut a prima facie case with evidence that additional costs not within the control of the defendant were imposed on the defendant for the goods or services.[4]

At least two New York courts have found gas stations to have engaged in price gouging after Hurricane Katrina in remarkably similar circumstances as those found in the case before this Court. In *Spitzer v. My Service Center, Inc.*, 14 Misc.3d 1217(A), 836 N.Y.S.2d 487, 2007 WL 102463, 2007 (N.Y. Sup., Westchester Cty. 2007)(appended to *Schultz Aff. as Ex. # 4)*, the court found that increases in gas prices following Hurricane Katrina to $3.45/gallon (resulting in a 32 cent/gallon increase in profit margin from pre-Katrina margins), and to $3.62/gallon (resulting in a 21 cent/gallon increase in profit margin from pre-Katrina margins) both "patently violated" the New York price gouging statute, given that they were "excessive increases" which

---

[4]    Defendants seek to distinguish New York Gen. Bus. Law §396-r from 940 CMR § 3.18 by arguing that the New York law reflects both the substantive and procedural elements of unconscionability, while the Massachusetts law focuses solely on substantive unconscionability to the exclusion of procedural concerns. *Def. Memo, p. 11, n. 8.* It is true that the New York statute specifically notes that its purpose is to prevent retailers from taking unfair advantage of consumers during abnormal disruptions of the market. It is patently obvious that the Massachusetts statute (similarly limited to market emergency periods), while not having a statement of legislative intent, was similarly passed to prevent retailers, such as defendants, from taking unfair advantage of consumers from market disruptions which cause volatility and confusion in pricing and economic hardship to consumers.

"did not bear any relation to the supplier's cost".  This compares to the facts of this case where on the two worst days (October 14 and 15), Edgartown Mobil increased its profit margins from pre-Katrina margins by 43cents/gallon and for an entire month (October), Edgartown Mobil sold its gasoline at a price affording it a 31 cent/gallon increase in profit from what it was realizing pre-Katrina.

In *Spitzer v. Wever Petroleum, Inc.*, 14 Misc.3d 491, 827 N.Y.S.2d 813 (N.Y.Sup., Albany Cty. 2006)(appended to *Schultz Aff. as Ex. # 5)*, the court found that a gas station's increase in its price per gallon to $3.60/gallon following Hurricane Katrina, which resulted in increases in profits/gallon ranging from 14 cents/gallon - 60 cents/gallon violated the New York price gouging statute.  Specifically, the court found:

> [T]here exists a gross disparity between a $0.83 per gallon mark-up pre-Hurricane Katrina and a $0.97, $1.08 or $1.43 per gallon mark-up post Hurricane Katrina. Further, this Court finds that the respondent's claims, even if true, that its increase in retail price was the result of a supplier increase, failed to rebut the inference that the price increases were attributable to respondents' use of the leverage provided by the market disruption and were therefore unconscionably excessive. While Wever did raise prices in accordance with an increase in Exxon Mobil's base cost, Wever's increase far exceeded the needed increase for Wever to maintain a similar pre-Hurricane profit or to generate the required revenue to purchase gasoline from ExxonMobil the next business day and were unconscionably excessive.

B.    There is A Dispute of Material Fact As To Whether the Price At Which Defendants Sold Regular Gasoline at Edgartown Mobil during the Market Emergency Period Was Grossly Disparate to the Price At Which the Same or Similar Product Was Readily Obtainable By Other Buyers in the Trade Area.

Defendants argue that plaintiffs cannot maintain a "price gouging" case pursuant to the provisions of 940 CMR 3.18(2)(a)(2), which make it illegal to sell gasoline at a price grossly disparate to the price at which the same or similar product is readily obtainable by other buyers in the trade area.  To support this argument, defendants contend that "it would make no practical

or economic sense for a consumer in Martha's Vineyard to make the trek to Cape Cod, incur the transportation costs associated with the trip (to and from the Cape), and then make his or her way back to Martha's Vineyard, merely to purchase gasoline". *Def. Memo, p. 4.*  Plaintiffs agree with defendants that Vineyard gas stations have a "captive" customer base, which is exactly why they have been able to fix prices over the past nine years.  However, defendants fail to address the relevant issue, which is whether Cape Cod is in the same "trade area" as the Vineyard.  The "market area" from which the Island stations draw their customers is not the same as the "trade area" to which the "price gouging" statute allows comparison to determine if price gouging has occurred.  It is the very fact that the Island stations have a captive consumer base which makes their price gouging all the more egregious; consumers have no other place to turn.  The purpose of section 3.18(2)(a)(2) is to allow a court to compare prices at the alleged wrongdoer's station to the prices being charged at other stations with comparable costs in the same trade area. Section 3.18(2)(a)(2) would be rendered a nullity in small market areas, if it only allowed comparisons to the small number of other stations in the small market area.

Martha's Vineyard and Cape Cod (Southeast Massachusetts) should be considered as being in the same "trade area".  The price paid by Edgartown Mobil is tied to the rack price of gasoline in either the Providence, Rhode Island or Boston, Massachusetts area.  *See Schultz Aff., ¶ 3* and *Ex. # 2.*  Truck delivery costs to Cape Cod from either Boston or Providence should be similar or identical  to truck delivery costs to the ferry terminal in Woods Hole from which gasoline is then ferried over to Martha's Vineyard.   According to data released by the Oil Petroleum Information Service, the average price per gallon of regular gasoline on Cape Cod was $3.12 in September 2005, $2.81 in October 2005, and $2.39 in November 2005.  *Schultz*

*Aff., Ex. # 3.* This compares to the average price per gallon of regular gasoline at Edgartown

Mobil, which was $3.73 (i.e. 61 cents/gallon higher than prices on Cape Cod) in September

2005, $3.48 (i.e. 59 cents/gallon higher than prices on Cape Cod) in October 2005, and $3.04

(i.e. 65 cents/gallon higher than prices on Cape Cod) in November 2005. *Bastardi Aff., Ex. # 1.*

Defendants contend that these differences are attributable to costs of transportation, consumption

patterns, seasonal variations and other market differences. *Def. Memo, p. 4.* However,

defendants present no facts supporting their asserted explanation for the cost differential, and,

thus, have shown no undisputed facts upon which they could be granted summary judgment on

this issue.

<div style="margin-left:2em">

C.    <u>There is A Dispute of Material Fact As To Whether the Disparity in Price of
Regular Gasoline Sold By Defendants During the Market Emergency Was
Substantially Attributable to Increased Prices Charged by its Suppliers.</u>

</div>

The FTC Report is determinative in deciding the question of whether the defendants'

disparity in prices between its pre-hurricane prices and its post-hurricane prices can be justified

as substantially attributable to increased prices charged by its supplier. To determine whether

price increases were cost based, the FTC examined profit margins. *Schultz Aff., Ex. # 1, p. 138.*

The FTC concluded that if price increases were attributable to increased costs, operating margins

should remain relatively unchanged. *Id.* The FTC reasoned that it was best to use monthly

comparisons of profit margins, as trends can be more confidently established by using monthly

averages. *Id.* The FTC noted that significant changes in margins that might only occur for a

week will be reflected in monthly averages. *Id.*

To determine when an increase in profit margin constituted "price gouging", the FTC

examined 99 retailers, all of whom had been accused of price gouging after Katrina, and many of

whom had settled state charges and paid a fine.  *Id., pp. 150-151.*  Staff received documents from

39 of these retailers. *Id.*  Twenty four (24) of these stations were single-location retailers.  *Id.*  Of

the 24 stations, the average increase in margin for September 2005 compared to August 2005

was 2 cents/gallon. *Id.* The FTC concluded that a retailer had "a price increase not substantially

explained by increased costs if its gross margin increased by more than five cents per gallon or

more between August and September 2005."  *Id., p. 151.*

In this case, Edgartown Mobil's price margin increased from August by 17 cents/gallon

in September, 31 cents/gallon in October and 24 cents/gallon in November, *Bastardi Aff., Ex. #*

*1,* all well above the five cents/gallon increase found by the FTC, which could be justified by

increased costs.

D.  <u>There is a Dispute of Material Fact As To Whether Defendants Sold Regular</u>
<u>Gasoline at an Unconscionably High Price During the Market Emergency Period.</u>

Defendants contend that plaintiffs must satisfy the criteria set forth in Section 3.18(2) in

order to prove that defendants sold their gasoline at an unconscionably high price.  While

plaintiffs acknowledge that evidence of the criteria set forth in Section 3.18(2) proves violation

of the price gouging law, there is nothing in the regulation which indicates this is the only

method of establishing price gouging.  Section 3.18(1) independently states that "It shall be an

unfair or deceptive act or practice, during any market emergency, for any petroleum-related

business to sell or offer to sell any petroleum product for an amount that represents an

unconscionably high price."   While 940 CMR §3.01 defines "market emergency", it does not

define "unconscionably high price".  If the Attorney General had wished to define

"unconscionably high price" as the criteria set forth in Section 3.18(2), it could have done so by

establishing the Section 3.18(2) criteria as the definition of "unconscionably high price".

As the Court noted in *Brady v. Brady*,  380 Mass. 480, 484 (1980), the maxim of statutory construction, which suggests that a statutory expression of one thing is an implied exclusion of other things omitted from the statute,."is not to be followed where to do so would frustrate the general beneficial purposes of the legislation."  It would frustrate the general beneficial purposes of the price gouging law to limit its application to circumstances where there are "gross disparities" of before and after prices during a market emergency period.  As previously noted, the general purpose of the price gouging law is to keep a retailer from taking advantage of a market emergency to charge excessively high prices to consumers.  However, excessively high prices are not necessarily higher prices than existed prior to the market emergency period.  As illustrated from the evidence in this case, gas stations can gouge a consumer by failing to lower their prices to match their lower costs toward the end of the market emergency period when prices rapidly fall. In this case, in late November, 2005, Edgartown Mobil continued to realize profits 25 cents/gallon higher than it had been realizing prior to the hurricanes, even though its pump price had dropped below its August 2005 pump price. *Bastardi Aff., Ex. # 1.*  Edgartown Mobil did not return its margin to its pre-Katrina margins until December 2005.  By taking advantage of the market turmoil caused by Katrina and Rita, even in late November, Edgartown Mobil continued to gouge its consumers, although there was no longer a gross disparity between its price and the price it charged before Katrina.  These facts evidence a violation of Section 3.18(1), even if they do not satisfy the criteria of Section 3.18(2) for these later dates in the period.[5]  *See, People v. Two Wheel Corp.*, 71 N.Y.2d 693, 695-6, 530

---

[5]      Plaintiffs note that at all times, including late November 2005, Edgartown Mobil's price were grossly disparate from prices on Cape Cod.  Moreover, even if this Court were to find, *arguendo,* that the criteria of Section 3.18(2) must be satisfied to find a violation of the price gouging law, this would only affect the amount of damage to which plaintiffs would be entitled, and would not affect

N.Y.S.2d 46, 49-50, 525 N.E.2d 692 (1988) (Where sales occurred over a relatively short period of time and were associated with a single market disruption, the presumption that the excess was unconscionably obtained in violation of price gouging statute, though established through proof of gross disparities, extends as well to the sales marked by lesser increases.)

      E.      <u>The Common Law Cases Cited by Defendants Are Inapplicable to Interpreting the Massachusetts Price Gouging Law.</u>

Defendants rely wholly on common law cases defining when a contract can be rescinded because it contains a price which is unconscionably high.  *See Def. Memo, pp. 6-8.*  Defendants ignore that this is not a common law action, but rather a claim brought pursuant to Mass. Gen. Laws c. 93A.  As the Massachusetts Supreme Judicial Court has stated on numerous occasions, the "consumer protection statutes (i.e. Chapter 93A) created new substantive rights by making conduct unlawful which was not previously unlawful under the common law or any prior statute. The statutory language is not dependent on traditional tort or contract law concepts for its definition."  *Heller v. Silverbranch Construction Corp.*, 376 Mass. 621, 625 (1978); *see, also, Golden v. Lipis*, 72 Mass.App.Ct. 1110 (2008); *Kattar v. Demoulas*, 433 Mass. 1, 13 (2000).

It is understandable that a bargained for contract can only be set aside for excessive price under the most stringent of circumstances.  The same stringent set of circumstances should hardly be applied to a market emergency situation, where the Attorney General has already made a determination that consumers are subject to price gouging by gas station owners who seek to take advantage of them.  The common law criteria upon which defendants rely are simply inapplicable.

---

whether defendants were at this time entitled to summary judgment.

F.     The Interpretation of the Massachusetts Price Gouging Law Suggested by
       Defendants Would Render the Statute a Nullity.

Defendants ask this Court to adopt the criteria set forth in Alperin, 35 *Massachusetts*

*Practice Series: Consumer Law, § 5:34,* meant for invalidating arms length bargained contracts

to determine when a gasoline station violates the "price gouging" law established to prevent the

taking advantage of consumers in  market emergency periods.  *Def. Memo, p. 7.*  According to

Alperin, "it may be stated as a very rough rule of thumb that whenever the sale price exceeds 2

times the retail value or something over four times the wholesale cost of the item, a finding of

unconscionability is likely."

If this Court were to adopt the Alperin standards proposed by defendants, it would render

the Massachusetts price gouging statute to be a nullity, In order for a gas station to be charging

two times the retail prices of other gas stations after Hurricane Katrina, the station would have

had to charge a price of $6.26/gallon, i.e. twice the $3.13/gallon average price being charged on

Cape Cod.  *Schultz Aff., Ex. # 3.*  As noted previously, according to the FTC Investigation of gas

prices after Hurricane Katrina, of the 24,197 gasoline stations examined across the country, in

only one city did the highest price stay above $3.50/gallon for more than one day.  In order for a

Edgartown Mobil to charge four times its wholesale cost, it would have had to charge a price of

$11.84/gallon, i.e. 4 times its average cost of $2.96/gallon in September 2005.  To even suggest

this as the standard for violation of the price gouging law is facially preposterous.

As noted in *Commonwealth v. Boston Edison Co,* 444 Mass. 324, 339 (2005), courts will

not "interpret a statute in such a way as to make a nullity of its provisions if a sensible

construction is available."  This Court should adopt the sensible interpretation proposed by

plaintiffs, which recognizes that gas stations can indeed price gouge, when unreasonably

-15-

charging excessive prices not justified by their costs in market emergencies, and not defendants'

proposed interpretation under which no gas station could ever commit the offense of "price

gouging".

II.     DEFENDANTS FAIL TO PRESENT FACTS FROM WHICH THE COURT COULD
        CONCLUDE THAT THEY SHOULD BE ENTITLED TO SUMMARY JUDGMENT
        RELATING TO SALES OF PREMIUM GASOLINE AND DIESEL FUEL AT THE
        EDGARTOWN MOBIL STATION AND RELATING TO THE SALE OF ALL
        GASOLINE AT THE DEPOT CORNER STATION.

        The Defendants operate two gasoline stations in Edgartown, and sell both regular and

premium gasoline and diesel fuel.  *Bastardi Aff., ¶¶* 3-5.  Yet, they only present facts relating to

the sale of regular gasoline at one of their two gas stations.  For this reason alone, defendants'

Motion for Partial Summary Judgment cannot be granted.

## Conclusion

        For the reasons stated in this Opposition, Defendants' Motion for Partial Summary

Judgment should be denied.

Dated: December 15, 2008

//Stephen Schultz_____

Stephen Schultz (BBO # 447680)

Michael Roitman (BBO # 425720)

Engel & Schultz, LLP

265 Franklin Street, Suite 1801

Boston, MA 02110

(617) 951-9980

**Certificate of Service**

I, Stephen Schultz, hereby certify that on December 15, 2008, a true copy of the above document has been filed through the ECF system and thereby will be sent electronically to counsel for Defendants as identified on the Notice of Electronic Filing.  I further certify that paper copies will be sent to those indicated as non-registered participants.

Date:   December 15, 2008              /s/ *Stephen Schultz*

Stephen Schultz