UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM WHITE, R. CARLEEN CORDWELL, | ) |
| KEN BAILEY, NADINE MONACO, | ) |
| HENRY KRIEGSTEIN, JOAN KRIEGSTEIN, | ) |
| HILARY SCHULTZ, ANN BUTTRICK | ) |
| FLOYD AND SANDCASTLE REALTY, INC. | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) CIVIL ACTION NO. 07-CV-11601RWZ |
| v. | ) |
| | ) |
| R.M. PACKER COMPANY, INC., | ) |
| DRAKE PETROLEUM CO., INC., | ) |
| KENYON OIL COMPANY, | ) |
| DEPOT CORNER, INC., AND | ) |
| FRANCIS J. PACIELLO | ) |
| D/B/A EDGARTOWN MOBIL | ) |
| | ) |
|     Defendants. | ) |

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

I.    <u>INTRODUCTION</u>

1.    The plaintiffs, individually, and on behalf of a class of individuals who purchased

gasoline at certain retail gas stations on the island of Martha's Vineyard, sue the defendants for

unfairly fixing the price of gasoline and gouging consumers who purchased gasoline.  The

plaintiffs, individually and as representatives of a class, present claims against the defendants for

violation of the Anti-Trust Law during the entire Class Period and for Price Gouging, during the

period after Hurricanes Katrina and Rita, in violation of Mass. Gen. Laws Chapter 93A, Section

2 and 940 CMR 3.18.  The plaintiffs seek money damages for the defendants' illegal actions.

2.      Plaintiffs' allegations are based on actual knowledge as to their own acts and

upon

the results of their attorneys' investigation and information and belief as to the actions of the

defendants.

II.     PARTIES

3.      The plaintiff William White is an individual who lives in Oak Bluffs, Dukes

County, Massachusetts.  He has owned one or more automobiles and purchased gasoline at one

or more of the following gasoline stations (XtraMart Citgo located in Vineyard Haven, MA,

Packer Shell located in Vineyard Haven, MA, Depot Corner Mobil located at 141 Main Street,

Edgartown, MA and Edgartown Mobil located at 199 Upper Main Street, Edgartown, MA

(hereafter collectively called "the Defendants' Gasoline Stations") during the Class Period and

during the market emergency period following Hurricanes Katrina and Rita.

4.      The plaintiff R. Carleen Cordwell is an individual who lives in Oak Bluffs, Dukes

County, Massachusetts.  She has owned one or more automobiles and purchased gasoline at one

or more of the Defendants' Gasoline Stations during the Class Period and during the market

emergency period following Hurricanes Katrina and Rita.

5.      The plaintiff Ken Bailey is an individual who lives in West Tisbury, Dukes

County, Massachusetts.  He has owned one or more automobiles and purchased gasoline at one

or more of the Defendants' Gasoline Stations during the Class Period and during the market

emergency period following Hurricanes Katrina and Rita.

6.      The plaintiff Nadine Monaco is an individual who lives in Oak Bluffs, Dukes

County, Massachusetts.  She has owned one or more automobiles and purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

7.      The plaintiff Joan Kreigstein owns a second home in Oak Bluffs, Dukes County, Massachusetts.  She has purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

8.      The plaintiff Henry Kreigstein owns a second home in Oak Bluffs, Dukes County, Massachusetts.  He has purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

9.      The plaintiff Hilary S. Schultz owns a second home in Edgartown, Massachusetts. She keeps an automobile parked year-round at her Edgartown home and purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

10.     The plaintiff Ann Buttrick Floyd is an individual who lives in Edgartown, Dukes County, Massachusetts.  Ann Buttrick Floyd also conducts business as All Island Rentals.  She has owned one or more automobiles and purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

11.     The plaintiff Sandcastle Realty, Inc. is a Massachusetts Corporation with a

principal place of business in Edgartown, Dukes County, Massachusetts.  Sandcastle Realty, Inc. has purchased gasoline at one or more of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

12.     The individual plaintiffs collectively purchased gasoline at all of the Defendants' Gasoline Stations during the Class Period and during the market emergency period following Hurricanes Katrina and Rita.

13.     Defendant R.M. Packer Company, Inc. ("R.M. Packer") is a Massachusetts Corporation with a principal place of business at 191c Beach Road, Vineyard Haven, Massachusetts 02568.

14.     Defendant Kenyon Oil Company, Inc. ("Kenyon") is a corporation with a principal place of business at Colebrook River Road, Winchester Center, Connecticut 06094. Kenyon is registered to do business in Massachusetts.

15.     Defendant Drake Oil Co., Inc. is a corporation with a principal place of business in N. Grosvenordale, Connecticut.  Drake is registered to do business in Massachusetts.  On or about January 1, 2004, defendant Drake merged with defendant Kenyon.  Defendants Kenyon and Drake are hereafter collectively referred to as "Drake".

16.     Drake is a subsidiary of Warren Equities, Inc. which has a principal place of business at 27 Warren Way, Providence, Rhode Island 02905.

17.     Defendant Depot Corner, Inc. (hereafter "Depot Corner") is a Massachusetts corporation with a principal place of business at 141 Main Street, Edgartown, Massachusetts.

18.     Defendant Francis J. Paciello d/b/a Edgartown Mobil is a sole proprietorship with a principal place of business at 199 Upper Main Street, Edgartown, Massachusetts.

IV.     JURISDICTION AND VENUE

19.     This Court has jurisdiction under 28 USC § 1331, 28 USC § 1332(d)(2), 28 USC

§ 1337, 15 USC § 4, 15 USC § 15(a) and 15 USC § 26.

V.      CLASS ACTION ALLEGATIONS

20.     This action is brought pursuant to Rule 23 of the Federal Rules of Civil Procedure

and Mass. Gen. Laws Chapter 93A, Section 9 (2).

21.     Count I of this lawsuit is brought as a class action on behalf of all individuals who

purchased gasoline at the Defendants' Gasoline Stations.  Not included within the Class

definition are individuals who are directors and officers of the defendant corporations or their

affiliates.  The Class Period for Count I runs from at least as early as December 31, 1999 to the

date of the filing of this lawsuit, with the exact dates to be determined during discovery in this

lawsuit.  Plaintiffs allege that during the Class Period defendants conspired to fix, raise, maintain

and/or stabilize gas prices relating to the prices being charged by Defendants' Gasoline Stations

to consumers.  Because of defendants' unlawful conduct, plaintiffs paid artificially inflated

prices for gasoline, and, as a result, suffered monetary damages.

22.     Count II of this lawsuit is brought as a class action on behalf of all individuals

who purchased gasoline at the Defendants' Gasoline Stations during the Market Emergency

Period following Hurricanes Katrina and Rita.  Not included within the Class definition are

individuals who are directors and officers of the defendant corporations or their affiliates.  The

Class Period for Count II runs from approximately August 31, 2005 through December 2, 2005,

with the exact dates to be determined during discovery in this lawsuit.  Plaintiffs allege that

during the Market Emergency Period defendants engaged in price gouging by charging

unconscionably high prices for the sale of gasoline at Tisbury Shell, Vineyard Haven XtraMart, Edgartown Mobil and Depot Corner Mobil gas stations. Because of Defendants' unlawful conduct, plaintiffs paid unconscionably high prices for gasoline, and, as a result, suffered monetary damages.

23.    The Class for Count I is composed of more than ten thousand persons, the joinder of whom is impracticable except by means of a class action. The Class for Count II is composed of thousands of persons, the joinder of whom is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. Defendants sell millions of gallons of gasoline in Massachusetts to thousands of consumers every year; the Classes are sufficiently numerous to make joinder impracticable, if not completely impossible.

24.    There is a well-defined community of interest in the questions of law and fact involving and affecting the parties to be represented. Common questions of law and fact exist and such common questions predominate over any question of law or fact which may affect only individual Class members. Such common questions include the following:

(1)    Whether defendants engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize prices of gasoline being sold at the Defendants' Gasoline Stations.

(2)    The identity of the participants in the conspiracy.

(3)    The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by the defendants in furtherance thereof.

(4)     Whether the alleged conspiracy violated Section 1 of the Sherman

Act.

(5)     Whether the conduct of the defendants, as alleged in this

Complaint, caused injury to the plaintiffs and the members of the Class.

(6)     The effect of the conspiracy on the prices charged by defendants

for the sale of gasoline to consumers.

(7)     Whether a market emergency existed regarding the sale of gasoline

following Hurricanes Katrina and Rita.

(8)     Whether defendants engaged in price gouging by selling gasoline

at

unconscionable prices following Hurricanes Katrina and Rita.

(9)     Whether defendants' unconscionable pricing violated

Massachusetts General Laws Chapter 93A, Section 2.

(10)    The amount that prices increased beyond market levels when

defendants charged unconscionable prices during the market emergency

following Hurricane Katrina.

(11)    The appropriate measurement(s) of damages suffered by plaintiffs

and the members of the Class.

(12)    Whether by reason of defendant's violations of 15 USC § 1 and

Mass. Gen. Laws. c. 93A, the plaintiffs and the Class are entitled to recover

statutory damages.

25.     Plaintiffs assert claims that are typical of the claims of the entire Class.  They will

fairly and adequately represent and protect the interests of the Class.  Plaintiffs have no interests

antagonistic to those of the Class.  Plaintiffs have retained counsel who are competent and

experienced in complex civil litigation including litigation involving gas prices on Martha's

Vineyard.

26.     Plaintiffs anticipate that there will be no difficulty in the management of this

litigation.  A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

VI.     FACTS

        A.     The Conspiracy to Sell Gasoline Above Market Prices

27.     The three major towns on the island of Martha's Vineyard (Tisbury/Vineyard

Haven [hereafter "Vineyard Haven"], Oak Bluffs and Edgartown) are all located Down Island.

Approximately 75% of the year round population of Martha's Vineyard lives in Vineyard Haven,

Oak Bluffs and Edgartown.  There are six gasoline stations ("the Down Island gas stations") in

or near the town centers of Vineyard Haven, Oak Bluffs and Edgartown.

28.     The defendant R.M. Packer ("Packer") owns the Shell station in Vineyard Haven

and sells gasoline on a retail basis.

29.     The defendant Drake owns the Citgo station in Vineyard Haven and sells gasoline

on a retail basis.

30.     Depot Corner Inc. owns the Mobil Station located at 141 Main Street, Edgartown,

Massachusetts.

31.     Francis J. Paciello d/b/a Edgartown Mobil owns the Mobil Station located at 199

Upper Main Street in Edgartown.

32.     Defendant Francis J. Paciello is also President, Treasurer, Secretary, and sole Director of the defendant Depot Corner.  The two stations operated by Paciello shall hereafter be collectively referred to as the "Paciello stations".

33.     The Paciello stations purchased gasoline on a wholesale basis from Drake.

34.     The price for gasoline sold by the defendants on Martha's Vineyard is artificially high and does not reflect market prices.

35.     Prices at the Defendants' Gasoline Stations are parallel and interrelated.

36.     Conscious parallel pricing has been determined to be legal if a seller keeps prices higher than they need to be to make a profit, knowing they can maximize profits given the lack of competition.

37.     Defendant Packer has denied keeping retail prices of gasoline at Tisbury Shell higher than they need to be to make a profit, because he knows he can maximize his profits given the lack of competition.

38.     During the Class Period, defendants, on numerous occasions, instituted price increases and decreases in the same or similar amounts to become effective on the same day or within a short period of time of each other.

39.     As a rule (i.e. on the vast majority of occasions), defendants Packer and Drake agreed to keep prices identical or within one cent of each other at the two Vineyard Haven stations.

40.     As a rule, defendants Packer and Drake agreed to keep the price of gasoline sold

Case 1:07-cv-11601-RWZ   Document 94   Filed 02/13/09   Page 10 of 19

at the Paciello stations in Edgartown identical or higher than the prices being charged at the two

Vineyard Haven stations.  As a rule, the Mobil station at 199 Upper Main Street sold its gasoline

4 - 5 cents higher than the self-service station located at 141 Main Street.

41.     Drake made it known that if Paciello did not keep the price of gasoline at the

Paciello gasoline stations identical to or above the prices being charged at the Vineyard Haven

stations, but instead tried to sell gasoline at competitive market prices, that it would punish and

retaliate against the Edgartown Mobil stations by deliberately missing gasoline deliveries in the

summer.

42.     Drake controlled the price of gasoline at the Paciello gasoline stations by giving

the defendant Paciello a $2 million personal loan at a below market rate at a time when Paciello

was unable to obtain financing from any other source.

43.     Paciello kept the price of gasoline at the Edgartown Mobil Stations above market

levels as desired by Drake.

44.     Defendants Packer and Drake regularly communicated among each other despite

the fact that they were nominally competitors.

45.     Defendant Paciello acknowledges that he spoke with defendant Drake on

hundreds of occasions, and "maybe" he spoke with defendant Drake regarding the retail price of

gasoline on Martha's Vineyard.

46.     Changes in wholesale prices do not explain the changes in the price of gasoline

being charged at the retail level.

47.     Changes in the price of gasoline sold by Drake to the Edgartown Mobil gasoline

stations do not explain the changes in the price of gasoline charged by the Edgartown gasoline

stations to consumers.

48.     Changes in the demand for gasoline do not explain the concerted changes in

        prices

for gasoline being charged at the retail level.

49.     One or more of the conspirators have suggested that gasoline prices on Martha's

Vineyard are necessitated by the increased cost of transporting the gasoline to the Island and the

higher cost of living that exists on the Island.  This purported justification for the higher prices is

pretextual.

50.     Additional costs of selling gasoline on Martha's Vineyard include the cost of

transportation via either barge or the Steamship Authority, additional driver and truck time

necessitated by a waiting period on land for the ferry and the time for the ferry to cross from the

mainland to the Island, a labor cost differential and a cost of living adjustment.

51.     The total cost of transporting gasoline to the Island have ranged from as little as

4.5 cents/gallon - 20 cents/gallon during the class period.  The higher costs of doing business on

Martha's Vineyard are approximately 8-10 cents per gallon.

52.     Gasoline prices at the Defendants' Gasoline Stations regularly exceed the cost of

comparable gasoline on Cape Cod by approximately 60 cents per gallon.

53.     According to available data, the profit margins (i.e. the difference between

wholesale price - defined as the rack rate plus federal and state taxes plus estimated freight

delivery charges - and the retail price) realized by defendants exceeded the margins realized by

comparable Cape Cod gas stations, on average, by approximately 40 cents per gallon.

54.     The defendants have enjoyed profits far in excess of the profits realized by other

gas stations selling equivalent amounts of gasoline.

55.     Significant barriers to entry at the station level make super-competitive

conspiratorial prices feasible.  Barriers to entry for new stations include the need to obtain

approval of the Martha's Vineyard Commission, which in recent years has repeatedly refused the

request of a proposed "discount" gas station to build a new competitive station in Vineyard

Haven.

56.     In fact, defendant Drake secretly funded a campaign to keep the "discount" gas

station from obtaining a permit to open.

57.     The defendants have conspired to allow each party to realize excess profits

beyond market conditions.

B.     Price Gouging

58.     On August 29, 2005, Hurricane Katrina hit New Orleans.

59.     In the week following Hurricane Katrina, the United States lost 27% of its crude

oil production and 13% of its national refining capacity.

60.     On September 26, 2005, Hurricane Rita made landfall and damaged another 8%

of the United States' crude oil production.  Accounting for the refineries which had gone back on

line between August 29 and September 26, 2005, 14% of the country's national refining capacity

was lost after Hurricane Rita.

61.     Nationwide and on Martha's Vineyard, gasoline prices at the pump rose

approximately        50 cents/gallon in the week following Hurricane Katrina.

62.     While in the rest of the nation, retail prices had dropped from their highs by

approximately 35 cents/gallon by the time Hurricane Rita hit, retail prices at the Defendants'

Gasoline Stations had dropped only approximately 20 cents/gallon from their high price by the

time Hurricane Rita hit.

63.     By early December, 2005, prices nationwide had returned to the levels prevalent

at the start of the summer 2005, as most of the price effects of the hurricanes had dissipated by

that time.

64.     Section 1809 of the Energy Policy Act of 2005, Pub. L. No. 109-58 § 1809, 119

Stat. 594 (2005) required the Federal Trade Commission to "conduct an investigation to

determine if the price of gasoline was being artificially manipulated by reducing refinery

capacity or by any other form of market manipulation or price gouging practices."  In addition,

Section 632 of the Federal Trade Commission's appropriations legislation for fiscal 2006

directed the Commission to investigate nationwide gasoline prices and possible price gouging in

the aftermath of Hurricane Katrina.  2006 Pub. L. No. 109-108 § 632.  In response, the Federal

Trade Commission issued its "Investigation of Gasoline Price Manipulation and Post-Katrina

Gasoline Price Increases (Spring 2006)" (hereinafter "the FTC Gas Price Report").

65.     According to the FTC Gas Price Report, retail gasoline prices are highly

responsive to wholesale costs in an Emergency Market period, as other costs (such as labor or

real estate) are not likely to change significantly during a short period.  Retailer profits are

measured by gross margin per gallon, which equals the average price per gallon sold minus the

average cost per gallon purchased from wholesalers.

66.     The time between August 29, 2005 and December 1, 2005 was a market

emergency period.

67.    The FTC Gas Price Report examined gasoline prices at 24,197 gasoline stations across the country.  It found that retailers priced at very high prices for only very short periods during the market emergency period following Hurricanes Katrina and Rita.  In fact, in only one city studied did the highest price stay above $3.50/gallon for more than one day.  In Chapel Hill, North Carolina, a high of $3.71 was posted for four consecutive days at one station.  Stations' peak price generally lasted only 1 or 2 days, and only lasted for 4-5 days on a couple of occasions for the over 24,000 stations studied.  Four thousand six hundred and fifty four (4,654) stations were examined in the Northeast, while one thousand five hundred and eighty nine (1,589) stations were examined in the Boston area.

68.    The FTC did not examine gas prices at Defendants' Gasoline Stations.  If it had, it would have found that at the Edgartown Mobil station, regular gasoline was sold for 47 straight days at a price above $3.50/gallon, and that the peak price of $3.889 remained for six consecutive days.  At Depot Corner Mobil, the price of regular gasoline stayed above $3.50 for 46 straight days, and the peak price of $3.849 remained for 6 days.  At Vineyard Haven XtraMart Citgo, the price of regular gasoline stayed above $3.50 for 42 straight days, and the peak price of $3.699 remained for 17 straight days.  At Tisbury Shell, the price of regular gasoline stayed above $3.50 for at least 23 straight days, and the peak price of $3.569 remained for 12 straight days.

69.    To determine when an increase in profit margin constituted "price gouging", the FTC examined 99 retailers, all of whom had been accused of price gouging after Katrina, and many of whom had settled state charges and paid a fine.  Staff received documents from 39 of these retailers.  Twenty four (24) of these stations were single-location retailers.  Of the 24

stations, the average increase in margin for September 2005 compared to August 2005 was 2 cents/gallon.  The FTC concluded that a retailer had "a price increase not substantially explained by increased costs if its gross margin increased by more than five cents per gallon or more between August and September 2005."

70.     Edgartown Mobil's average daily gross margin for regular gasoline in  September 2005 was 17 cents/gallon higher than its average daily gross margin in August 2005, 31 cants/gallon higher in October 2005 than it was in August 2005, and 24 cents/gallon higher in October 2005 than it was in August 2005.

71.     Depot Corner Mobil's average daily gross margin for regular gasoline in September 2005 was 16 cents/gallon higher than its average daily gross margin in August 2005, 29 cents/gallon higher in October 2005 than it was in August 2005, and 24 cents/gallon higher in October 2005 than it was in August 2005.

72.     Vineyard Haven XtraMart Citgo's average daily gross margin for regular gasoline in September 2005 was 29 cents/gallon higher than its average daily gross margin in August 2005, 22 cents/gallon higher in October 2005 than it was in August 2005, and 19 cents/gallon higher in October 2005 than it was in August 2005.

73.     Tisbury Shell's average daily gross margin for regular gasoline in September 2005 was 8 cents/gallon higher than its average daily gross margin in August 2005, 28 cents/gallon higher in October 2005 than it was in August 2005, and 25 cents/gallon higher in October 2005 than it was in August 2005.

74.     The defendants, as a rule, purchased premium gasoline for 15-20 cents/gallons higher than regular gasoline, and, as a rule, sold premium gasoline for 15-20 cents/gallon higher than regular gasoline.

75.     The defendants increased their margins unconscionably in the sale of premium gasoline during the market emergency period.

76.     The defendants Vineyard Haven XtraMart Citgo, Edgartown Mobil and Depot Corner Mobil gasoline stations sold a mid-level grade of gasoline, which was a blend of regular and premium gasoline.

77.     Those stations selling mid-grade gasoline  increased their margins unconscionably in the sale of mid-grade gasoline during the market emergency period.

78.     As the result of the concerted action by all of the defendants to sell gasoline at the same or similar prices, the price margins on the sale of gasoline for all of Defendants' Gasoline Stations increased during the Market Emergency Period after Hurricanes Katrina and Rita.

79.     All of defendants engaged in price gouging in the sale of gasoline (both regular, premium and mid-grade [where applicable]) in violation of the Massachusetts Price Gouging Law, 940 CMR § 3.18, promulgated by the Massachusetts Attorney General pursuant to Mass. Gen. Laws, Chapter 93A, § 2 (c).

## COUNT I

### Violation of 15 USC § 1 - Retail Prices - Price Fixing (All Defendants)

80.     The plaintiff Class repeats and realleges paragraphs one through seventy nine.

81.     The defendants contracted, combined and conspired in restraint of trade or commerce.

82.     The defendants contracted, combined or conspired among themselves to fix, raise,

maintain and/or stabilize the prices charged at the retail level to purchasers of gasoline at the

Defendants' Gasoline Stations.

83.     The plaintiffs and the Class were injured in their business or property as a result

        of

the actions of the defendants.

84.     The defendants acted with malicious intent to injure the Class including the

plaintiffs.

WHEREFORE, the Class respectfully requests that the Court:

a.     enter judgment for violation of Section 1 of the Sherman Act for the Class
       against the defendants;

b.     award the Class money damages from defendants in an amount sufficient
       to compensate the Class for its actual damages;

c.     award the Class treble its actual damages;

d.     award the Class its reasonable attorney's fees and costs; and

e.     award the Class such further relief as the Court deems just and proper.

## COUNT II

### Chapter 93A - Price Gouging (All Defendants)

85.     The plaintiff Class repeats and realleges paragraphs one through eighty four.

86.     R.M. Packer is engaged in trade or business within the Commonwealth of

Massachusetts, including the distribution and retail trade or business of selling gasoline.

87.     Drake is engaged in trade or business within the Commonwealth of

Massachusetts, including the distribution and retail trade or business of selling gasoline.

88.     Depot Corner, Inc. is engaged in trade or business within the Commonwealth of

Massachusetts, including the distribution and retail trade or business of selling gasoline.

89.     Francis J. Paciello d.b.a. Edgartown Mobil is engaged in trade or business within

the Commonwealth of Massachusetts, including the distribution and retail trade or business of

selling gasoline.

90.     Defendants' sale of gasoline at an unconscionably high price during a market

emergency following Hurricanes Katrina and Rita was an unfair act or practice in the conduct of

their trade or business in violation of Chapter 93A Section 2 and 940 CMR 3.18.

91.     As a result of the unfair and deceptive acts or practice of defendants the plaintiffs

and the Class suffered damages.

92.     The violation of Chapter 93A by defendants was intentional.

93.     Pursuant to Chapter 93A, Section 9(3), at least thirty days prior to the filing of

        this action, plaintiffs made a written demand for relief from the defendants

        relating to the claims set forth in this Count, identifying the claimants and

        reasonably describing the unfair or deceptive acts or practices relied upon and the

        injury suffered by plaintiffs.

   WHEREFORE, the Class respectfully requests that the Court:

        a.      enter judgement for violation of Chapter 93A for the Class against the
                defendants;

        b.      award the Class money damages from the defendants in an amount
                sufficient to compensate the Class for their actual damages;

        c.      award the Class treble its actual damages;

        d.      award the Class its reasonable attorney's fees and costs; and

e.      award the Class such further relief as the Court deems just and proper.

JURY DEMAND

Plaintiffs demand trial by jury on all claims so triable.


DATE: February 6, 2009                              PLAINTIFFS,
                                                    By their attorney,

                                                    s// Stephen Schultz

                                                    _____
                                                    Stephen Schultz, Esquire; BBO # 447680
                                                    Michael Roitman, Esquire; BBO # 425720
                                                    Of Counsel
                                                    Engel & Schultz, LLP
                                                    265 Franklin Street, Suite 1801
                                                    Boston, MA 02110
                                                    (617) 951-9980