UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM WHITE, R. CARLEEN CORDWELL, KEN BAILEY, NADINE MONACO, HENRY KRIEGSTEIN, JOAN KRIEGSTEIN, HILARY SCHULTZ, ANN BUTTRICK FLOYD, and SANDCASTLE REALTY, INC., <br><br> Plaintiffs <br><br> v. <br><br> R.M. PACKER COMPANY, INC., DRAKE PETROLEUM CO., INC., KENYON OIL COMPANY, DEPOT CORNER, INC., and FRANCIS J. PACIELLO d/b/a EDGARTOWN MOBIL, <br><br> Defendants | CIVIL ACTION <br> No. 07-CV-11601-RWZ |

**THE DEFENDANTS' JOINT STATEMENT OF UNDISPUTED FACTS
PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDMGENT ON COUNT I (PRICE-FIXING)**

Pursuant to Local Rule 56.1, the defendants jointly submit the following statement of undisputed facts in support of the Defendant's Joint Motion for Summary Judgment on Count I.

1. The defendants are the owners and operators of four gasoline stations on Martha's Vineyard. The four defendant gasoline stations are:

- Tisbury Shell – located in Vineyard Haven and owned by R.M. Packer;

- XtraMart Citgo – located in Vineyard Haven and owned by Drake/Kenyon;

- Edgartown Mobil – located in Edgartown and owned by Francis Paciello; and

- Depot Corner – located in Edgartown and owned by Depot Corner, Inc.

2. There are six gasoline stations in or near the town centers of Vineyard Haven,

Oak Bluffs and Edgartown.  See the plaintiffs' Second Amended Complaint, ¶27, attached hereto as Exhibit 1.

3. Plaintiff alleges that only four of the six gasoline stations in or near the town centers of Vineyard Haven, Oak Bluffs and Edgartown conspired to fix the price of gasoline on Martha's Vineyard.  See the plaintiffs' Second Amended Complaint, ¶¶27 and 82.

4. Two gasoline stations located in Oak Bluffs are located less than three miles away from the two defendants in Vineyard Haven.  These two non-defendant gasoline stations are DeBettencourt Mobil and Jim's Fuel Station.

5. In addition, there are three other gasoline stations located on Martha's Vineyard that are not defendants in this case.  They are Airport Fuel Services in Edgartown, Up-Island Automotive in West Tisbury and Menemsha Texaco in Chilmark.

6. In total there are nine gasoline stations located on Martha's Vineyard, only four of which are alleged to have conspired according to the plaintiffs' Second Amended Complaint.

7. Plaintiffs allege that the four defendants contracted, combined or conspired among themselves to fix, raise, maintain and/or stabilize the prices charged at the retail level to purchasers of gasoline at the defendants' gasoline stations.  See the plaintiffs' Second Amended Complaint, ¶82.

8. In the plaintiffs' answers to the defendants' contention interrogatories, they cite their personal observations and the experts' proposed testimony as the basis for their allegations of price-fixing.  See Plaintiff Hillary Schultz's Answer to Interrogatory No. 8, p. 5, attached hereto as Exhibit 2;   Plaintiff Nadine Monaco's Answer to Interrogatory No. 8, p. 5,  attached hereto as Exhibit 3; Plaintiff Joan Kriegstein's Answer to Interrogatory No. 8, p. 8, attached hereto as Exhibit 4;   Plaintiff Henry Kriegstein's Answer to Interrogatory No. 8, p. 5, attached

hereto as Exhibit 5; Plaintiff Ken Bailey's Answer to Interrogatory No. 8, p. 5, attached hereto as Exhibit 6; Plaintiff Ann Buttrick Floyd and Sandcastle Realty, Inc.'s Answer to Interrogatory No. 8, p. 8, attached hereto as Exhibit 7; Plaintiff William White's Answer to Interrogatory No. 8, p. 8, attached hereto as Exhibit 8; and Plaintiff Carleen Cordwell's Answer to Interrogatory No. 8, p. 5, attached hereto as Exhibit 9.

9. In the plaintiffs' depositions, they testify similarly. See Deposition of Hilary Schultz, pp. 21-25, attached hereto as Exhibit 10; Deposition of Nadine Monaco, p. 16, attached hereto as Exhibit 11; Deposition of Joan Kriegstein, pp. 11-13, attached hereto as Exhibit 12; Deposition of Henry Kriegstein, pp. 24 and 39, attached hereto as Exhibit 13; Deposition of Ken Bailey, pp. 15 and 18, attached hereto as Exhibit 14; Deposition of Ann Buttrick Floyd, p. 31, attached hereto as Exhibit 15; and Deposition of William White, pp. 27-28, attached hereto as Exhibit 16, and Deposition of Carleen Cordwell, pp. 26-27, attached hereto as Exhibit 17.

10. Plaintiff Hilary Schultz, in her deposition testimony also cites the expected testimony of Steven Wehner as a basis for the plaintiffs' price-fixing claim. See Deposition of Hilary Schultz, pp. 21-25, Exhibit 10.

11. For purposes of this Motion only, the defendants will stipulate that the prices at the defendants' gasoline stations are parallel and interrelated as alleged by the plaintiffs in ¶35 of the plaintiffs' Second Amended Complaint.

12. Steven Wehner, a former island resident who unsuccessfully petitioned the Martha's Vineyard Commission to open his own gas station, testified that he met with Jim Ahearn of Drake in 1999 to discuss whether Drake would be interested in supplying Wehner's proposed gas station or leasing such property to run its own station. As a result of that meeting, Mr. Wehner claims that he "got the impression that on retail price . . . that Ralph [Ralph Packer]

3

set the price and that Drake followed it, . . ." See Deposition of Steven Wehner, pp. 110, Exhibit 18.

13. The basis of Mr. Wehner's impression was an alleged phone call by Jim Ahearn to Ralph Packer, in which Mr. Wehner claims he heard Mr. Ahearn call Ralph Packer on the speakerphone and say something to the effect of "I'm checking in, how are you?" See Deposition of Steven Wehner, p.40, Exhibit 18.

14. "They [Ahearn and Packer] did not talk about pricing or anything like that." See Deposition of Steven Wehner's, p. 40, Exhibit 18.

15. In the context of a discussion regarding leasing the property, Ahern also allegedly told Wehner that "Ralph and I talk;" and, in response to Wehner's question whether Drake would consider giving a 10 cent discount to island residents, said, "Ralph Packer is not giving the people anything, I'm not going to give them anything." See Deposition of Steven Wehner, pp. 52-53 and p. 40, Exhibit 18.

16. Ahearn also allegedly suggested that if the Edgartown stations "started dropping prices . . . one or two delivery trucks might not make it on the boat and they'll get the idea real quick." See Deposition of Steven Wehner, p. 44, Exhibit 18.

17. Wehner then offered his opinion: "it was my understanding that they [Drake – a wholesale supplier to the Edgartown stations] orchestrated the delivery trucks, that it was in their purview to have a delivery not make it every once in a while maybe if they needed to get somebody's attention because they controlled the delivery." Id.

18. On the subject of price-fixing, Wehner admitted however that he is "not aware of any conversations between anyone at R.M. Packer and anyone at Drake regarding pricing of gasoline on Martha's Vineyard" and has no evidence of any price fixing involving the Paciello

4

defendants either. See Deposition of Steven Wehner, p. 107 and 115, Exhibit 18.

19. The plaintiffs' proposed expert, Frank Gollop, examined the prices of all the defendant stations and compared them to prices charged in three towns on Cape Cod during the same period of time. He did not compare the defendants' prices to the prices charged by the other five gas stations on the island, including two stations in Oak Bluffs located less than three miles away from the two defendants in Vineyard Haven (miles nearer than the defendants in Edgartown are to those in Vineyard Haven). Indeed his report is entirely silent regarding the presence of the five other gasoline stations located on Martha's Vineyard and the extent to which they participate in the sale of retail gasoline on the island. See Expert Report of Frank Gallop, attached hereto as Exhibit 19.

20. Comparing the defendants' prices to those in selected towns on Cape Cod, Gollop concludes that the gasoline sold at the defendants' stations (four stations in total) was sold at "supra-competitive" prices "during at least the August 2003 through July 2008 period." See Expert Report of Frank Gollop, p. 19, Exhibit 19.

21. Next, comparing the daily price data for the four defendant stations to each other, Gollop finds that the defendants engaged in "parallel pricing." See Expert Report of Frank Gollop , p. 26, Exhibit 19.

22. Examining the defendants' daily price and cost data, Gollop states that the inferences to be drawn from the pricing behavior are "mixed". See Expert Report of Frank Gollop, p. 19, Exhibit 19.

23. Gollop states that there are instances where the evidence is "not inconsistent with either cooperative or non-cooperative behavior" and others where the pricing pattern is "not inconsistent with non-cooperative behavior." See Expert Report of Frank Gollop, p. 20, Exhibit

19.

24. Gollop's only conclusion in favor of the plaintiffs is that there are some limited time intervals in which the pricing patterns are "inconsistent with independent, non-cooperative behavior." See Expert Report of Frank Gallop, pp. 20-22, Exhibit 19.

25. For example, Gollop opines that the price pattern he examined between May of 2004 and September of 2004 "was not the expected non-cooperative business strategy." See Expert Report of Frank Gollop, pp. 21-22, Exhibit 19.

26. Similarly, Gollop opines that "the patterns of pricing in the post-Katrina interval . . . are inconsistent with the model of non-cooperative behavior." See Expert Report of Frank Gollop, p. 24, Exhibit 19.

27. The plain meaning of these opinions is that Gollop finds evidence of conscious parallelism. After finding conscious parallelism, Gollop next considers three "'plus factors' from which [according to plaintiffs' counsel] courts can infer a conspiracy when found in conjunction with 'conscious parallelism.'" See Expert Report of Frank Gollop, p. 25, Exhibit 19.

28. The three plus factors he considers are: (1) abnormal profits, (2) fixed market shares for substantial periods of time, and (3) existence of an industry conducive to oligopolistic price fixing, either interdependently or through a more express form of collusion." Id.

29. On the subject of profits, Gollop concludes that the profits among the gas stations are consistent with interdependent but otherwise non-cooperative competition. Id.

30. With respect to market shares, Gollop reaches an ambiguous conclusion that the evidence does not suggest cooperative or non-cooperative behavior. See Expert Report of Frank Gollop, p. 26, Exhibit 19.

31. Considering the evidence of parallel pricing, Gollop also acknowledges, "No

6

unambiguous conclusion regarding cooperative or non-cooperative pricing can be gleaned from this pattern of parallel pricing. The observed pattern of parallel pricing is not inconsistent with either form of pricing behavior." See Expert Report of Frank Gollop, p. 27, Exhibit 19.

32.  On the subject of the market structure, Gollop concludes that it reveals "an economic environment conducive to oligopolistic pricing. The principal market characteristics are barriers to entry and inelastic demand." See Expert Report of Frank Gollop, p 27, Exhibit 19.

> The defendants,
> DRAKE PETROLEUM CO., INC. and
> KENYON OIL COMPANY,
> By their attorneys,
>
> /s/ William J. Fidurko
> Brian A. O'Connell (BBO# 551182)
> William J. Fidurko (BBO# 567064)
> ZIZIK, POWERS, O'CONNELL,
> SPAULDING & LAMONTAGNE, P.C.
> 690 Canton Street, Suite 306
> Westwood, MA 02090
> (781) 320-5402
>
> The defendants,
> R.M. Packer, Co., Inc.
> By its attorneys,
>
> /s/ Richard W. Paterniti
> Patrick T. Jones (BBO# 253960)
> Peter J. Schneider (BBO# 446520)
> Richard W. Paterniti (BBO# 645170
> COOLEY MANION JONES, LLP
> 21 Custom House Street
> Boston, MA 02110
> (617) 737-3100
>
> The defendants,
> FRANCIS J. PACIELLO d/b/a
> EDGARTOWN MOBIL AND DEPOT
> CORNER, INC.,
> By their attorneys,

/s/ Kevin C. Cain
Kevin C. Cain (BBO# 550055)
PEABODY & ARNOLD LLP
600 Atlantic Avenue
Boston, MA 02210
(617) 951-2100

Dated:  May 15, 2009

**CERTIFICATE OF SERVICE**

    I, William J. Fidurko, counsel for the defendants DRAKE PETROLEUM CO., INC. and KENYON OIL COMPANY, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 15th day of May, 2009.

/s/ William J. Fidurko
William J. Fidurko (BBO# 567064)